IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>MARIA FIGUEROA GUADALUPE<br><br>DEBTOR<br><br>---<br><br>FIRSTBANK PUERTO RICO<br><br>MOVANT | CASE NO. 11-06264(MCF)<br>CHAPTER 13<br><br>(x) Objection to confirmation for lack of Post Confirmation Adequate Protection and Insurance |

*OBJECTION TO THE CONFIRMATION OF THE PLAN*

TO THE HONORABLE COURT:

COMES NOW, Movant **FIRSTBANK PUERTO RICO**, through its undersigned attorney and very respectfully states and prays:

**I.    Factual and Procedural Bakground**

1. The jurisdiction of the Honorable Court is ascertained under Title 28 USC §1334 and the following sections of the Bankruptcy Code: 361, 1325, and 1326.

2. On **July 22, 2011**, Debtor filed the instant petition for relief under Chapter 13 of the Bankruptcy Code. *See, Docket 1.*

3. Movant's standing is ascertained as it filed a secured lien claim for the amount of $3,253.80, by virtue of duly registered conditional sales contract regarding a **2006 Mitsubishi Lancer.** *See, Claim No. 5.*

4. Under the Chapter 13 plan dated **July 22, 2011**, Debtor provided for the payment "In Full" for Movant's claim, along with the with the following payments to the Chapter 13 Trustee: **$110.00 x 60 months.** Also, and in the pertinent part, the proposed plan included the following provision:

- <u>**Attorney's fees will be paid ahead of secured creditors per 11 USC 330.**</u>
- <u>**Adequate protection to FirstBank in the amount of $75.00**</u>

*See, Docket 2.*

5. The appearing creditor does not accept the treatment of its claim under the proposed plan and hereby objects to the confirmation of debtor's plan dated July 22, 2011, on the following grounds:

    (a) Debtor's provision for payment of $75.00 as Adequate Protection **only up to confirmation,** will leave FirstBank's collateral without the required post-confirmation adequate protection, by receiving $0.00 payments, for more than twenty-eight (28) months, and without considering the insurance costs, while attorney's fees are being paid; and

    (b) Inspite of the fact, that the proposed plan includes a provision that Debtors will provide insurance coverage to First Bank thru Eastern America, as of this date, Debtor has not submitted the evidence of such insurance.

In support of this contention, FirstBank Puerto Rico will show to the Court as follows:

## *II.* **Applicable Law**

### *(a) Relevant Sections of the Bankruptcy Code*

The following provisions of the Bankruptcy Code, as amended by BAPCPA, are relevant.

Section 507(a) of the Bankruptcy Code (11 USC §507(a)) states in part:

> **(a)** The following expenses and claims have priority in the following order:
>
> **(1)** First:
>
> **(A)** Allowed unsecured claims for domestic support obligations (...)
>
> **(B)** (...)
>
> **(C)** If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503 (b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

>**(2)** Second, administrative expenses allowed under section 503 (b)[1] of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Section 1322 of the Bankruptcy Code (11 U.S.C. §1322) sets forth the requirement for what a Chapter 13 plan must and may contain. That section states in the relevant part:

>**(a)** The plan shall—
>**(1)** provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
>**(2)** provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
>**(3)** if the plan classifies claims, provide the same treatment for each claim within a particular class; and
>**(4)** notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507 (a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
>**(b)** Subject to subsections (a) and (c) of this section, the plan may—
>**(1)** ...
>**(2)** ...
>**(3)** ...
>**(4)** provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

Section 1325 sets forth the requirements for confirmation of a chapter 13 plan. Section 1325(a) provides that a court shall confirm a plan if:

>(...)

---

[1] Attorney's fees are administrative expenses allowed under section 503(b) as "reasonable compensation for professionals services rendered by an attorney or an accountant of an entity whose expense is allowable". 11 U.S.C. §503(b)(4).

> **(5)** with respect to each allowed secured claim provided for by the plan—
> **(A)** the holder of such claim has accepted the plan;
>
> **(B) (i)** the plan provides that—
> **(I)** the holder of such claim retain the lien securing such claim until the earlier of—
> **(aa)** the payment of the underlying debt determined under nonbankruptcy law; or
>
> **(bb)** discharge under section 1328; and
>
> **(II)** if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> **(ii)** the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> **(iii)** if—
> **(I)** property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
> **(II)** the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> **(C)** the debtor surrenders the property securing such claim to such holder;
>
> (...)

Section 1326 concerns the order of payments in a Chapter 13 Plan. That section reads in the pertinent part:

> (...)
> **(b)** Before or at the time of each payment to creditors under the plan, there shall be paid—
> **(1)** any unpaid claim of the kind specified in section 507 (a)(2) of this title;

(...)

### *(b) Requirements of Adequate Protection and Equal Monthly Payments*

The Bankruptcy Code's criteria for treatment of secured claims are set forth in section 1325(a)(5), which was extensively amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, (BAPCPA 2005). For that confirmation standard to be met, with respect to each allowed secured claim provided for by the plan, (1) the holder of such claim must accept the plan, (2) the plan must provide that the holder of such claim retain the lien securing the claim and the value, as of the effective date of the plan, of any property to be distributed under the plan on account of the claim is not less than the amount of the claim, **with the property distributed in equal monthly payments at least sufficient to provide adequate protection to the holder of such claim**, *or* (3) the debtor surrenders to the holder of any such claim the property securing the claim. *See 8 Collier on Bankruptcy, Ch. 1325 (Matthew Bender 15th ed. rev.).*

The concept of adequate protection finds its basis in the Fifth Amendment's protection of property interest. *H.R. REP. NO. 95-595, 338-340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963,* (cited in *In re Cook, 371 B.R. 695).* Adequate protection is also grounded in the belief that secured creditors should not be deprived of the benefit of their bargain. *Id.* The Bankruptcy Code does not define adequate protection, but it does provide a non-exclusive list of examples in Section 361.

Section 361 provides three nonexclusive methods of providing adequate protection of an entity's interests in property, as may be required by other sections of the Code. Adequate Protection may be in (1) the form of cash payments, (2) replacement liens or (3) methods that results in the realization of the indubitable equivalent of an entity's interest in the property. 11 USC 361.

Before the passage of BAPCPA, the Code did not explicitly treat the question of post-confirmation adequate protection, although secured creditors at any time could request relief from the automatic stay under §362 for cause including lack of adequate protection. This strategy was not always successful, particularly in courts that regarded confirmation as res judicata on the issue of adequate protection. (...) Moreover, courts pre-BAPCPA had the discretion to interpret post-confirmation adequate protection in

light of the circumstances of the case. See, cases cited in *In re Denton,* 370 B.R. 441 (2007).

BAPCPA has dramatically changed this landscape. Section1325(a)(5)(B)(iii)(II) now explicitly requires post-confirmation adequate protection and further specifies that it must be in a form of money at least equal to the depreciation of the collateral. The failure to so provide in a Chapter 13 plan would violate the lien retention rights of a secured creditor guaranteed under 11 U.S.C. §1325(a)(5)(B)(i). *In re Dispirito, 371 B.R. 695 (Bkrtcy. D.N.J., 2007).* This issue was addressed in detail by Judge Keith Lundin in his well respected treatise on Chapter 13 practice. Pertinently, Judge Lundin writes:

> Lien retention in section 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal depreciation in the value of the collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of present value (interest) after confirmation, lien retention avoids constitutional problems through depreciation and use of collateral by the debtor after confirmation. **Put in another way, even if the plan recites that secured claim holders retain liens, if the payments proposed by the plan are insufficient to stay ahead of depreciation, the retained liens will erode faster than the allowed secured claim is paid, contrary to the intent of section 1325(a)(5)(B)(i).**

Lundin, *Chapter 13 Bankruptcy, 3d Ed., Vol 2, Section 104.2, page 104-4,* cited in *In re Dispirito, Id.* Additional support may be found in the recently enacted provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), wherein Congress has mandated that adequate protection payments must be paid during the period of the plan, pursuant 11 U.S.C. §1325(a)(5)(B)(iii)(II).

Courts are divided on the subject of Adequate Protection after confirmation. A number of courts have adopted the position that "adequate protection payments" may continue post-confirmation in one amount, with "equal monthly payments" replacing them at a higher amount at some later time during the plan. *See, In re Hill 2007 WL 499622 (Bankr. M.D.N.C.2007); In re DeSardi 340 B.R. 790 (Bankr.S.D.Tex.2006); In re Erwin, 376 B.R. 897 (Bankr.C.D.Ill.2007),*

Conversely, other courts have held that that "periodic payments ... in equal monthly amounts" refer to *all* payments made on allowed secured claims after confirmation, and those payments must begin with the trustee's first distribution under a

confirmed plan. *See, e.g., Denton*, 370 **B.R.** at 446; *see also In re Espinoza*, No. 08-20778, 2008 WL 2954282 (Bankr. D.Utah Aug.1, 2008); *Wells Fargo Fin. Georgia, Inc. v. Baxter (In re Williams)*, 385 **B.R.** 468 (Bankr.S.D.Ga.2008); Sanchez, 384 **B.R.** at 578. These courts conclude that equal monthly payments must begin with confirmation and continue until the secured claim is paid in full. *Denton*, 370 **B.R.** at 443. According to these courts, the periodic payments contemplated under the code refer to all "regularly-recurring post-confirmation payments on an allowed secured claim." *Id.* at 446. Because the code states that the periodic payments shall be in equal monthly amounts, the courts conclude that all periodic payments after confirmation must be in equal monthly amounts. *Id.*

Nevertheless, the result will be the same with both line of case, immediately after confirmation a secured creditor shall be paid an amount sufficient to compensate the depreciation of its collateral until its claim be paid off.

As discussed above, Section 1325(a)(5) was amended by BAPCPA to provide if payments on allowed secured claims are "to be distribute in the ... form of periodic payments, such payments shall be in equal monthly amounts." 11 U.S.C. §1325(a)(5)(B)(iii)(I). Furthermore, if a claim is secured by personal property, the payment "shall not be less than the amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." 11 U.S.C. §1325(a)(5)(B)(iii)(II). These two provisions changed the "mathematics of the Chapter 13 plans with side effects for the payment of attorney fees.". 5 Keith M. Lundin, *Chapter 13 Bankruptcy* §442.1, p.442-2 (3d ed. 2000 & Supp. 2007-1), cited in *In re Williams*, 2008 WL 872277 (BANKR. S.D.Ga.).

Chapter 13 debtor's attorneys who receive some or all of their fees through the through the plan must construct the plan so that distributions to the attorney do not threaten the availability of funds to make required equal installments payments to lienholders that are sufficient to provide adequate protection after confirmation. The collision of these stakeholders---the attorney armed with a priority claim and the lienholder entitled to adequate protection and equal monthly payments--- will require more careful calculation of the funding of Chapter 13 plans after BAPCPA. Attorneys in

some districts may have to adjust their practices to take smaller fee payments over a longer time in Chapter 13 cases. 5 Keith M. Lundin, *Chapter 13 Bankruptcy* §442.1, p.442-3 (3d ed. 2000 & Supp. 2007-1), cited in *In re Williams*, 2008 WL 872277 (BANKR. S.D.Ga.).

Section 1326(b)(1) of the Bankruptcy Code requires the payment of administrative expenses "before or at the time of each payment to creditors under the plan (…)". Therefore, the Bankruptcy Code does not require attorney's fees to be paid in full prior to creditors; it simply requires that they be paid before or contemporaneously to creditors. *In re Shorb*, 101 B.R. 185, 186 (9th Cir.BAP 1989).

### III. ALLEGATIONS

6. Since October 17, 2005, BAPCA became in effect. Under such act once the debtor provides for the payment in full of any personal security interest, such as Movant's claim, the debtor needed to provide for: adequate protection, equal monthly payments and insurance within the 60 days of the date of petition.

7. Here, the proposed plan provides to pay FirstBank the monthly amount of $75.00 as adequate protection only up to confirmation and that attorney's fees will be paid ahead of secured creditors. **Thus, such provision will leave Movant's collateral without post-confirmation adequate protection for more than 28 months if the plan is confirmed and while attorney's fees are paid off, which means that the collateral that secures Movant's claim will continue to depreciate in value.** *See, Attachment A.* For that reason, the Court in *In re Lanigan*, 101 B.R. 530, 533 (Bankr. N.D.Ill. 1986), stated the following:

> "There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share the risk of possible failure thereof and thereby be encouraged to scrutinize all plan even more closely. When plan payments are small and payment of fees out of front will delay payments to creditors for many months, the sharing of risk and encouragement of more scrutiny will be served by spreading out payment of attorney's fees over time, at least over the early months of the plans while debtor and creditors also get some benefit from monthly payments that apply partly to debts".

8. In this case, and according to the depreciation factor that applies to vehicles in Puerto Rico, the **minimum <u>post-confirmation</u> adequate protection and/or equal monthly payment that FirstBank is entitled to receive <u>immediately after confirmation</u>,** would be **$138.20**. [2006 Mitsubishi Lancer, valued in $8,325.00 x 1.66% as depreciation factor = $138.20] *See Attachment B.*

9. On the basis of the aforesaid, FirstBank opposes to the confirmation of the proposed plan and respectfully requests that the Honorable Court denies the confirmation of plan until debtor complies with the insurance, adequate protection and equal monthly payments requirements, along with the attorney's fees.

In San Juan, Puerto Rico, the 12 day of September, 2011.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this motion has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, this motion will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

Puerto Rico Local Bankruptcy Rule 9013-1(h)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of this motion is being sent by first class mail to the Debtor: **MARIA A. FIGUEROA GUADALUPE,** at the address on record: CALLE MILAGROSA CABEZA, B3 URB. CAROLINA ALTA, CAROLINA, PUERTO RICO 00987; and to the authorized addresses through/by the Bankruptcy CM/ECF System to: Debtor's counsel, **JOSE M. PRIETO CARBALLO;** and to **JOSE RAMON CARRION MORALES,** Chapter 13 Trustee and to the **US TRUSTEE.**

    BY: **//s// MARISTELLA SANCHEZ RODRIGUEZ**
        Maristella Sanchez Rodriguez, Esq.
        Attorney for Movant- US 224714
        MARIA M. BENABE-RIVERA, ESQ.
        Attorney for Movant- US 208906
        PO Box 9146, Santurce, PR 00908-0146
        1519 Ponce de León Ave., 2nd Floor
        Tel. (787) 729-8135, Fax (787) 729-8270
        Email: maristella.sanchez@firstbankpr.com

| AÑO | MESES | INFULL FB | ATRA(?) DOR. | HONORARIOS ABOGADO |
|---|---|---|---|---|
|  | 2010 ENE |  |  |  |
|  | FEB |  |  |  |
|  | MAR |  |  |  |
|  | ABR |  |  |  |
|  | MAY |  |  |  |
|  | JUN |  |  |  |
|  | JUL |  |  |  |
|  | AGO |  |  |  |
|  | SEP |  |  |  |
|  | OCT |  |  |  |
|  | NOV |  |  |  |
|  | DIC |  |  |  |
|  | 2011 ENE |  |  |  |
|  | FEB |  |  |  |
|  | MAR |  |  |  |
|  | ABR |  |  |  |
|  | MAY |  |  |  |
|  | JUN |  |  |  |
| PLAN | JUL |  |  |  |
| 1 | AGO | $75.00 |  |  |
| 2 | SEP | $75.00 |  |  |
| 3 | OCT |  |  | $48.00 |
| 4 | NOV |  |  | $99.00 |
| 5 | DIC |  |  | $99.00 |
| 6 | 2012 ENE |  |  | $99.00 |
| 7 | FEB |  |  | $99.00 |
| 8 | MAR |  |  | $99.00 |
| 9 | ABR |  |  | $99.00 |
| 10 | MAY |  |  | $99.00 |
| 11 | JUN |  |  | $99.00 |
| 12 | JUL |  |  | $99.00 |
| 13 | AGO |  |  | $99.00 |
| 14 | SEP |  |  | $99.00 |
| 15 | OCT |  |  | $99.00 |
| 16 | NOV |  |  | $99.00 |
| 17 | DIC |  |  | $99.00 |
| 18 | 2013 ENE |  |  | $99.00 |
| 19 | FEB |  |  | $99.00 |
| 20 | MAR |  |  | $99.00 |
| 21 | ABR |  |  | $99.00 |
| 22 | MAY |  |  | $99.00 |
| 23 | JUN |  |  | $99.00 |
| 24 | JUL |  |  | $99.00 |
| 25 | AGO |  |  | $99.00 |
| 26 | SEP |  |  | $99.00 |
| 27 | OCT |  |  | $99.00 |
| 28 | NOV |  |  | $99.00 |
| 29 | DIC |  |  | $99.00 |
| 30 | 2014 ENE |  |  | $99.00 |
| 31 | FEB | $24.25 | $0.50 | $74.00 |
| 32 | MAR | $96.03 | $1.98 |  |
| 33 | ABR | $96.03 | $1.98 |  |
| 34 | MAY | $96.03 | $1.98 |  |
| 35 | JUN | $96.03 | $1.98 |  |
| 36 | JUL | $96.03 | $1.98 |  |
| 37 | AGO | $96.03 | $1.98 |  |
| 38 | SEP | $96.03 | $1.98 |  |
| 39 | OCT | $96.03 | $1.98 |  |
| 40 | NOV | $96.03 | $1.98 |  |
| 41 | DIC | $96.03 | $1.98 |  |
| 42 | 2015 ENE | $96.03 | $1.98 |  |
| 43 | FEB | $96.03 | $1.98 |  |
| 44 | MAR | $96.03 | $1.98 |  |
| 45 | ABR | $96.03 | $1.98 |  |
| 46 | MAY | $96.03 | $1.98 |  |
| 47 | JUN | $96.03 | $1.98 |  |
| 48 | JUL | $96.03 | $1.98 |  |
| 49 | AGO | $96.03 | $1.98 |  |
| 50 | SEP | $96.03 | $1.98 |  |
| 51 | OCT | $96.03 | $1.98 |  |
| 52 | NOV | $96.03 | $1.98 |  |
| 53 | DIC | $96.03 | $1.98 |  |
| 54 | 2016 ENE | $96.03 | $1.98 |  |
| 55 | FEB | $96.03 | $1.98 |  |
| 56 | MAR | $96.03 | $1.98 |  |
| 57 | ABR | $96.03 | $1.98 |  |
| 58 | MAY | $96.03 | $1.98 |  |
| 59 | JUN | $96.03 | $1.98 |  |
| 60 | JUL | $96.03 | $1.98 |  |
|  | AGO |  |  |  |
|  | SEP |  |  |  |
|  | OCT |  |  |  |
|  | NOV |  |  |  |
|  | DIC |  |  |  |
|  | 2017 ENE |  |  |  |
|  | FEB |  |  |  |
|  |  | $2,809.12 | $57.92 | $2,795.00 |



**NADA GUIDES**

The Power of Vehicle Information
NADAguides.com

☒ Close Window

9/8/2011

**2006 Mitsubishi Lancer**

Sedan 4D ES

# NADAguides.com Price Report

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| **Base Price** | $4,375 | $5,275 | $6,000 | $8,225 |
| **Mileage:** 72,000 miles | $100 | $100 | $100 | $100 |
| **Options:** |  |  |  |  |
| TOTAL PRICE | $4,475 | $5,375 | $6,100 | $8,325 |

$8,325 × 1.66% = $138.70

## Standard Equipment

### Standard Equipment Details

**Engine Specifications**
Type: Gas I4
Size: 2.0L/122
Horsepower: 120 @ 5500 RPM
Torque: 130 @ 4250 RPM

**Drive Train**
Drive Train: Front Wheel Drive
Transmission: 5 speed Manual w/OD

**Safety**
Air Bag-Driver-Front
Air Bag-Passenger-Front
Air Bag-Side-Body-Front
Brakes-ABS-4 Wheel
Brakes-Type-Front Disc/Rear Drum
Headlights-Auto-Off
Headlights-Daytime Running lights
Locks-Child Safety Rear Door
Trunk-Emergency Release

**Comfort & Convenience**
Air Cond-Front
Cruise Control
Keyless Entry
Locks-Pwr
Mirrors-Pwr Driver
Mirrors-Pwr Passenger
Mirrors-Vanity-Driver
Mirrors-Vanity-Passenger
Seat Trim-Cloth
Seat-Rear Pass-Through
Seats-Front Bucket
Steering Wheel-Adjustable
Steering-Pwr
Trunk-Release-Remote
Windows-Pwr

**Music & Entertainment**
Audio-AM/FM Stereo

Audio-CD Changer
Audio-CD Player

**Interior**
Floor Mats-Front
Floor Mats-Rear

**Exterior**
Defogger-Rear Window
Wipers-Intermittent
Wipers-Variable Speed Intermittent

**Tires**
Front Tire Size: P195/60R15
Rear Tire Size: P195/60R15

**Wheels**
Front Wheel Material: Steel
Rear Wheel Material: Steel

Back to top

**Rough Trade-In: $4,475**
Rough Trade-In values reflect a vehicle in rough condition. Meaning a vehicle with significant mechanical defects requiring repairs in order to restore reasonable running condition. Paint, body and wheel surfaces have considerable damage to their finish, which may include dull or faded (oxidized) paint, small to medium size dents, frame damage, rust or obvious signs of previous repairs. Interior reflects above average wear with inoperable equipment, damaged or missing trim and heavily soiled /permanent imperfections on the headliner, carpet, and upholstery. Vehicle may have a branded title and un-true mileage. Vehicle will need substantial reconditioning and repair to be made ready for resale. Some existing issues may be difficult to restore. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Average Trade-In: $5,375**
The Average Trade-In values on nadaguides.com are meant to reflect a vehicle in average condition. A vehicle that is mechanically sound but may require some repairs/servicing to pass all necessary inspections; Paint, body and wheel surfaces have moderate imperfections and an average finish and shine which can be improved with restorative repair; Interior reflects some soiling and wear in relation to vehicle age, with all equipment operable or requiring minimal effort to make operable; Clean title history; Vehicle will need a fair degree of reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of nadaguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Trade-In: $6,100**
Clean Trade-In values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Vehicle will need minimal reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Retail: $8,325**
Clean Retail values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition. Note: Vehicles with low mileage that are in exceptionally good condition and/or include a manufacturer certification can be worth a significantly higher value than the Clean Retail price shown.

The consumer values on NADAguides.com are based on the Consumer Edition of the NADA Official Used Car Guide® and should not be utilized for industry purposes. The consumer values may vary from the NADA Official Used Car Guide® values presented to you by insurance companies, banks, credit unions, government agencies and car dealers due to vehicle condition, regional market differences and frequency of updates.

ADVERTISEMENT


Check out new car prices & info
GET STARTED
• reviews
• pictures
• pricing
• compare


© Copyright 2011 National Appraisal Guides Inc. All Rights Reserved.